**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| JOSE DANIEL PINEDA ROA<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility<br>DAVID WESLING, Field Office Director,<br>DAVID VENTURELLA Acting Director U.S. Immigrations and Customs Enforcement,<br>and MARKWAYNE MULLIN, U.S. Secretary of Homeland Security, TODD BLANCHE, U.S. Attorney General<br><br>Respondents. | Case No. 1:26-cv-13315-AK<br><br>**PETITIONER'S SECOND MOTION TO ENFORCE THE PETITION FOR WRIT OF HABEAS CORPUS AND FOR AN ORDER OF RELEASE** |

## INTRODUCTION

On September 4, 2026, this Court held that Petitioner's first bond hearing was constitutionally deficient and ordered a new hearing before a different immigration judge. [Dkt. 15]. Because a general instruction to "hold a new hearing" had already proved inadequate once, the Court did not leave the second hearing to chance. It specified, in mandatory terms, four findings the immigration judge was required to make expressly on the record, including, in subsection (2)(d), "the reasons why less-restrictive alternatives to detention, such as GPS monitoring, would be ineffective to mitigate any risk." *Id.* at 3.

The second hearing was held on September 11, 2026, before Immigration Judge Kathryn Frames. Bond was again denied. The resulting order does not contain the findings this Court required. *See*, Exhibit 16-1.

Most plainly, on alternatives to detention, the order offers a single conclusory clause, that "there are no conditions or combination of conditions that could reasonably ensure the safety of

the community," and nothing else. It does not mention GPS monitoring. It does not mention any other condition. It gives no reason for the conclusion. This Court ordered reasons, not a recitation of the ultimate holding. Supplying the conclusion while omitting the reasoning is not compliance; it is the same defect this Court identified in its order, restated in different words.

The order is deficient in three further respects. It does not weigh Petitioner's evidence against the government's, as subsection (2)(b) required as it lists Petitioner's equities in a single sentence and then discounts each one on *flight-risk* grounds, never returning to the dangerousness question. It supplies no chain of reasoning connecting the evidence to a finding of dangerousness, as subsection (2)(c) required by substituting for that chain a finding of "disregard for the laws of the United States," which is a different concept supported by different authority. Finally, its alternative flight-risk holding is a single unelaborated sentence containing none of the finding's subsections (2)(a)–(d) demand.

Petitioner has now been detained since his arrest and has sat through two constitutionally inadequate bond hearings across more than two months of habeas litigation. Petitioner respectfully requests that this Court order his release on appropriate conditions of supervision.

**BACKGROUND**

1. Petitioner filed his Petition for Writ of Habeas Corpus on July 20, 2026 [Dkt. 1], amended July 23, 2026 [Dkt. 8]. The Court granted the Petition on August 3, 2026. [Dkt. 11].

2. Petitioner received a bond hearing before Immigration Judge Julian Nierva and was denied bond. [Dkt. 12]. Petitioner moved to enforce. [Dkt. 13].

3. On September 4, 2026, the Court granted that motion, holding the hearing constitutionally deficient because (a) the IJ made no reliability or fundamental-fairness finding as to the police reports he relied upon, *see Arias-Minaya v. Holder*, 779 F.3d 49, 54 (1st Cir. 2015);

(b) there was no indication the IJ considered Petitioner's evidence, *see Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023); and (c) there was no indication the IJ considered alternatives to detention, *see Costa v. McDonald*, No. 25-CV-13469, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026). [Dkt. 15 at 2–3].

4. The Court ordered a new § 1226(a) hearing within ten days before an IJ other than Judge Nierva, ordered that the IJ be furnished a copy of the order, and directed that the IJ "expressly state the following findings on the record": (1) whether the government proved dangerousness by clear and convincing evidence or flight risk by a preponderance; and (2) if so, (a) the particular evidence by which the government carried its burden; (b) how the IJ considered and weighed the information Petitioner provided in relation to the government's evidence; (c) the chain of reasoning connecting the evidence to the finding; and (d) the reasons why less-restrictive alternatives, such as GPS monitoring, would be ineffective. [Dkt. 15 at 3].

5. The hearing was held September 11, 2026, before IJ Kathryn Frames. This Court's order was admitted as Bond Exhibit 1. The written Bond Order of the Immigration Judge is dated September 15, 2026, and was served September 16, 2026. Bond was denied.

**ARGUMENT**

**I. The Order Again Fails to Address Less-Restrictive Alternatives to Detention**

This Court's directive on this point was the most specific of the four. The IJ was to state "the reasons why less-restrictive alternatives to detention, such as GPS monitoring, would be ineffective to mitigate any risk." [Dkt. 15 at 3] (emphasis added).

The entirety of the order's treatment of this subject appears in its final paragraph, appended to the dangerousness holding: the Court found "that there are no conditions or combination of

conditions that could reasonably ensure the safety of the community." That is the conclusion this Court asked the IJ to justify. No condition is named. GPS monitoring, specifically identified by this Court, is not mentioned anywhere in the order. Check-in requirements, curfews, electronic monitoring, third-party custodianship, and a bond in any amount are likewise absent. No reason is given why any of them would fail.

A conclusory assertion that no conditions would suffice is precisely what *Costa* forbids. *Costa v. McDonald*, No. 25-CV-13469, 2026 WL 371198, at *3 (D. Mass. Feb. 10, 2026). Were the recitation of that sentence enough, subsection (2)(d) would impose no obligation at all, and this Court's order would be satisfied by a phrase that any denial could carry as boilerplate. The requirement that an adjudicator give reasons means reasons a reviewing court can evaluate. *See Barnica-Lopez*, 59 F.4th at 530.

The omission is particularly consequential here because the risk the IJ identified is one that conditions address directly. The most recent incident involved operation of a moped; the adjudicated disposition was a continuance without a finding ("CWOF") for negligent operation. If the IJ believed no combination of conditions, including a driving prohibition, GPS monitoring, and supervised release, could mitigate that risk, the reasoning supporting that belief is not apparent from the order and was not supplied.

## II. The Order Does Not Weigh Petitioner's Evidence Against the Government's

Subsection (2)(b) required the IJ to state "how the immigration judge considered and weighed the information Petitioner provided in relation to the government's evidence." [Dkt. 15 at 3] (emphasis added). The order does not do this.

Petitioner's equities appear in a single introductory sentence including "fixed address, employment history, community ties, pending application for relief, and sponsorship," cataloged

without detail. The remainder of that paragraph then discounts each item, and does so on grounds that bear on *flight risk* rather than dangerousness:

- The pending Form I-360 is dismissed as "speculative," citing *Matter of Andrade* for the proposition that likelihood of relief affects "motivation to appear for a hearing," and *Matter of A-L-S-* for the proposition that speculative relief "does not materially diminish flight risk."

- The sponsorship letter is discounted for lack of financial documentation, citing *Matter of R-A-V-P-*, 27 I&N Dec. 803, 806 (BIA 2020), again a flight-risk analysis.

- Entry without inspection is invoked as showing "a disregard for the immigration laws."

Not one of these observations is tied to community safety. The order never states how a fixed address, a stable employment history, community ties, and a citizen sponsor weigh against the government's evidence of dangerousness. It simply neutralizes each equity using flight-risk reasoning and then announces that the clear-and-convincing dangerousness burden is met.

More serious is the omission of Petitioner's central piece of evidence. This Court expressly flagged it: the need for careful treatment was "particularly stark" because "Petitioner alleges that he was the victim of domestic violence and has filed a Form I-360 for a visa because of this status." [Dkt. 15 at 2]. The order acknowledges that "Counsel also contends that the Respondent's pending Form I-360 application stems from the abuse he allegedly suffered at the hands of his ex-wife, the alleged victim of the November 2023 incident," and then says nothing further. The IJ makes no finding crediting or discrediting the contention, assigns it no weight, and does not consider what it implies about the 2023 police report on which the dangerousness finding substantially rests. Noting an argument and resolving it are not the same thing. *See Barnica-Lopez*, 59 F.4th at 530 (requiring "reasoned consideration to the evidence as a whole," "supportable findings," and an adequate explanation of reasoning).

## III. The Order Supplies No Chain of Reasoning Connecting the Evidence to Dangerousness

Subsection (2)(c) required "the chain of reasoning connecting the evidence to the finding of dangerousness or flight risk." What the order supplies instead is a chronological catalog of police contacts followed by the conclusion that Petitioner "has an extensive criminal history from 2023-2026, including allegations of the Respondent attempting to flee from officers, indicating a significant disregard for the laws of the United States," citing *Matter of San Martin,* 15 I&N Dec. 167, 169 (BIA 1974), a flight-risk case concerning attempts to escape from authorities.

"Disregard for the law" is not dangerousness. The two findings rest on different evidence and serve different statutory purposes, and the order collapses them. The distinction matters because of what the catalog actually contains:

| Date | Charges | Disposition |
|---|---|---|
| Nov. 2023 | Domestic violence — assault | Dismissed |
| July 15, 2024 | Larceny by check | Dismissed |
| Apr. 13, 2026 | Number plate violation to conceal ID; uninsured motor vehicle; unregistered motor vehicle; marked lanes violation | Dismissed |
| Apr. 29, 2026 | Number plate violation to conceal ID; uninsured motor vehicle; unregistered motor vehicle | Dismissed |
| June 2, 2026 | Failure to stop; negligent operation of a motor vehicle; disorderly conduct | Failure to stop and disorderly conduct dismissed; negligent operation CWOF (6 months) |

Every charge but one was dismissed. The single adjudicated matter is a six-month continuance without a finding for negligent operation of a motor vehicle. The order nowhere explains how a record consisting of dismissed charges, motor-vehicle registration and insurance offenses, a dismissed larceny-by-check charge, and one CWOF for negligent operation amounts to *clear and convincing* evidence, proof producing "a firm belief or conviction,", that Petitioner endangers the

community. *Matter of Patel*, 19 I&N Dec. 774 (BIA 1988). No injury is alleged from the June 2026 incident. No weapon appears anywhere in the record. No violent offense has been adjudicated.

The order's observation that a CWOF constitutes a conviction for immigration purposes does no work on this question. Whether negligent operation of a motor vehicle is a "conviction" under INA § 101(a)(48)(A) bears on removability and on the availability of relief. It does not establish that the underlying conduct makes Petitioner dangerous, and the order does not claim otherwise. The result is that the order identifies evidence and announces a conclusion without connecting them. That is the gap subsection (2)(c) was written to close.

## IV. The Reliability Finding Does Not Reach the Concerns This Court Identified

The order does contain a reliability passage, which the first order lacked. But the passage does not engage the substance this Court flagged. The IJ found "the police reports to be reliable, given the officer and witnesses' observations" that is, the reports are reliable because of what the reports say. Circular reasoning of this kind establishes nothing; every police report recites the observations it contains. The fundamental-fairness finding rests entirely on the proposition that Petitioner had "an opportunity to challenge its veracity and refute its contents," which is true of any document admitted at any hearing and therefore cannot distinguish a fair use of a police report from an unfair one.

This Court's concern was concrete and specific. It identified four features of this record making a genuine reliability inquiry necessary: the only violent charges were dropped; Petitioner alleges he was the victim; the failure-to-stop and disorderly conduct charges were dismissed; and the negligent operation charge produced only a CWOF. [Dkt. 15 at 2]. The order recites the *Arias-Minaya* and *Rosa* standard but does not apply it to any of these features. *See Rosa v. Garland,* 114

F.4th1, 9-11 (1st Cir. 2024) (citing *Arias-Minaya v. Holder*, 779 F.3d 54 (1st Cir. 2015) (before relying on a police report an IJ must first determine "that the report is reliable and that its use would not be fundamentally unfair"). Reciting a legal standard is not making the finding the standard requires.

**V. The Alternative Flight-Risk Holding Cannot Sustain Detention**

The order closes with one sentence: "Assuming, arguendo, that DHS did not meet its burden to demonstrate the Respondent is a danger to the community, the Court would also find that DHS demonstrated by a preponderance of the evidence that the Respondent is a risk of flight."

That sentence contains no findings at all. It does not identify the particular evidence carrying the government's burden (subsection (2)(a)); it does not weigh Petitioner's evidence against it (subsection (2)(b)); it supplies no chain of reasoning (subsection (2)(c)); and it says nothing about alternatives to detention (subsection (2)(d)). This Court's order applied all four requirements to a flight-risk finding just as it did to a dangerousness finding: the conditions attach "if the government has carried its burden," without distinction between the two theories. [Dkt. 15 at 3].

The alternative holding therefore cannot save the order. If the dangerousness finding does not comply with this Court's order, there is no compliant flight-risk finding beneath it.

**VI. The Order Shifts the Burden to Petitioner**

Under *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021), which the order itself cites, DHS bears the burden of proof. The order nonetheless faults Petitioner for what he did not submit: he "failed to provide any financial documentation demonstrating the sponsor's ability to support the Respondent upon release." "Aliens detained pursuant to 8 U.S.C. § 1226(a) are entitled to receive a bond hearing at which the Government must prove the alien is either dangerous by

clear and convincing evidence or a risk of flight by a preponderance of the evidence and that no condition or combination of conditions will reasonably assure the alien's future appearance and the safety of the community." *Brito v. Barr*, 415 F. Supp. 3d 258 (D. Mass. 2019); *see also Pensamiento v. McDonald*, 315 F. Supp. 3d 684 (D. Mass. 2018). Treating the absence of evidence from Petitioner as a factor supporting continued detention inverts the allocation *Hernandez-Lara* requires and compounds the weighing failure described in Part II.

**REMEDY**

This Court "has significant discretion in determining the appropriate remedy," and that remedy "is broad and flexible." *See United States v. Torres-Otero*, 232 F.3d 24, 30 (1st Cir. 2000).

Petitioner has now received two bond hearings, neither of which satisfied due process, over a habeas action pending since July 20, 2026. The Court's September 4 order responded to the first failure by specifying, with unusual precision, what the second hearing had to contain. That precision was not enough. A third order directing the same agency to try again, without more, invites a third round of this litigation while Petitioner remains detained.

Petitioner accordingly requests that the Court:

**(a)** Order Petitioner released from custody forthwith on appropriate conditions of supervision, which may include GPS monitoring, reporting requirements, a residence condition at his fixed address, and a bond in an amount this Court finds appropriate; or

**(b)** In the alternative, order Respondents to provide a third bond hearing within five days before an immigration judge other than Judge Nierva and Judge Frames, and further order that if the immigration judge does not make each of the findings required by this Court's order, including express reasons why GPS monitoring and other identified conditions

would be ineffective, Petitioner shall be released on conditions without further order of this Court; and

**(c)** Order Respondents to file the transcript or audio recording of the September 11, 2026 hearing within three days, so that the Court may determine whether the required findings were stated on the record as ordered; and

**(d)** Grant such other relief as the Court deems just.

**CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests that the Court grant this Motion and order his release on conditions of supervision.

Respectfully submitted,
Petitioner,
By his Counsel,

*/s/ Stephen A. Roth*

Stephen A. Roth, Esq.
Law Office of Stephen A. Roth
102 Bridge Road, #2G
Salisbury, MA 01952
(978) 255-3157
*Counsel for Petitioner*

Dated: September 16, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2026, I electronically filed the foregoing Petitioner's Second Motion to Enforce with the Clerk of the Court using the CM/ECF system, which will send notification of filing to all registered parties.

Dated this 16th day of September, 2026.

*/s/ Stephen A. Roth*
Stephen A. Roth, Esq.

# EXHIBITS

16-1 Immigration Judge Order dated September 16, 2026